Loring, J.,
delivered the opinion of the court:
This case is important because of the rights it inwolves; and it is the first case here requiring us to construe the act of March 12, 1863, together with those acts, and proclamations of the executive, which measure the clemency of the government toward those who supported the rebellion, and which make a part of the means for the pacification of the country and the practical restoration of the Union. A. purpose greater than this lias never at any time, nor in any country, been submitted to judicial cognizance; and in assuming our portion of its responsibility, we acknowledge our obligation to counsel whose accuracy of thought and expression has presented to us distinctly the case we are to adjudge; and if we confine our opinion to the argument submitted to us in behalf of the petitioner, it is only because we have not found elsewhere anything so efficiently maintaining the claim.
The petitioner is a citizen of Louisiana, and he claims against the United States the proceeds of eighty-five bales of cotton which he alleges ivere taken from his possession by them.
He sets forth in his petition as follows, viz: “ That he ivas guilty of participating in the rebellion against the Uni ted States, but that he has been duly and legally pardoned for such participation by the President of the United States, and that he has received a pardon under the great seal dated on the 11th day of January, 1865, which has been duly accepted by your petitioner, and his acceptance, duly notified to the Secretary of State, is now on file in the office of that department; and he has complied with all the legal formalities in such case made *339 •and provided; and tinder tbe proclamations of amnesty and pardon issued by tbe President of tbe United States, your petitioner now stands and is entitled to be considered in law as if be never bad in, point of fact participated in tbe late rebellion against tbe United States, and consequently be now avers that in legal intendment, and under tbe allegations already made, be lias at all times borne true allegiance to tbe government of tbe United States, and tbat be lias not in any way aided, abetted, or given encouragement to tbe rebellion against tbe United States.”
The petitioner then sets forth tbe circumstances of tbe seizure of bis cotton, which, on this motion, are not material, except as they show tbat bis offence was prior to tbe seizure of tbe cotton, which be states to have been in tbe summer of 1865, “and after tbe surrender of all tbe rebel armies, and tbe suppression of tbe armed rebellion.”
The United States moved tbat tbe petition be dismissed—
1. Because tbe said petition does not contain sufficient averments to give this court jurisdiction to bear and determine said cause.
2. Because it is not stated and set forth in said petition tbat the claimant has at all times borne true faith and allegiance to tbe government of tbe United States, and tbat be has not in any way voluntarily aided, abetted, or given encouragement to rebellion- against tbe government of tbe United States, as required by tbe 12 tb section of tbe act of Congress to reorganize tbe Court of Claims, approved March 3, 1863.
3. Because said petition does not contain the averments required by Buie No. 2 of tbe rules of practice adopted by tbe Court of Claims.
The precise ground of claim is stated in tbe petition, and was fully developed in tbe argument of tbe learned counsel for tbe petitioner, which is thus condensed in bis brief:
“‘ Giving aid and comfort to tbe rebellion’ was a crime under tbe second section of Act nth July, 1862. (12 Stat. L., p. 590.) This crime tbe petitioner bad been absolved from by pardon and amnesty.
“‘Pardon makes tbe offender a new man, and acquits him of; all corporal penalties and forfeitures attached to tbat offence for which be obtained bis pardon.’ (4 Black’s Com., p. *402.) It is now settled tbat a pardon removes not only tbe punishment,. *340 but all the legal disabilities consequent on the crime. (Bacon’s Abridgment, verbo Pardon, vol. 7, p. 416, ed. 1846.) And a pardon prior to conviction prevents all forfeiture of lands or goods. (Same, p. 418.) Pardon by tlie President of one couvicted of counterfeiting renders the convict competent as a witness in a State court. (Hoffman v. Coster, 2 Wharton Penn., p. 453; The People v. Pease, 3 Johnson’s Cases, p. 333.) A pardon, when it is full, releases the punishment, and blots out the existence of the guilt, so that in the eye of the law the offender is as innocent as if he had never .committed the offence. (Ex parte Garland, 4 Wallace, 480.)
“The benefit of amnesty being added to the pardon greatly strengthens the petitioner’s case. Pardon alone does not do away with the fact that crime was committed; but amnesty buries the crime in oblivion. It is a matter of public policy. It raises the presuviptio juris et de jure that no such crime was ever committed, and forbids 'the judge to know it — that is, to allow it to be alleged and proved.
“The 13th section of the Act Ylth July, 1862, (12 Stat. L., p. 582,) having used both words pardon and amnesty, intended, according to the well known rule of interpretation, to give to offenders something more than pardon. The President, in his proclamation of May 29, 1865, (13 Stat. L., p. .728,) offers ‘amnesty and pardon, with restoration of all rights of property, except in slaves.’ Having received the benefit of this proclamation, petitioner has been both pardoned and amnestied, and restored to all his rights of property.
“ The legal meaning of amnestyis synonymous with its derivation; it is an act by which the offence is blotted out, and in a court of justice cannot be known to have existed.
“ ‘Amnesty is perfect oblivion of the past.’ (Vattel’s Law of Nations, b. 4, chap. 2. § 20.) All damages caused by the war are likewise buried in oblivion. ‘ They are considered as having never happened.’ . (Same, § 21.) Amnesty carries with it the abolishment of crime, prosecution, and condemnation; so that a second offense committed after an amnesty cannot entail the increased penalties attached by law to second offences. (Clivi-encetfs Case, Sirey’s Jurisprudence of the Court of Cassation, France, vol. 26, year 1826, part 1, p. 164. See also, Charas-son’s Case, Sirey’s Jurisprudence, Court of Cassation, year 1839, vol. 39, columns 984,985.) ‘Amnestyis more than pardon, since, *341 instead of doing away with tlie further eifects of a sentence, it suppresses forever the accusation itself, and consequently renders the crime itself as if it had never taken place.’ (Banter’s Treatise on Criminal Law, edition, Brussels 1837, p. 498.)
“The President having, by his plenary power, made the petitioner as if he never had committed the crime, and having, by his act of grace, so effaced the criminal act that it not only has ceased to exist, but courts are forbidden to listen to an allegation of it, it follows that the rule of court, which calls upon the petitioner to make affidavit in respect ‡0 the matter, is in conflict with the act of the President and the legislation of Congress.
“ If, then, the petitioner, who has, in pursuance of the public policy of the government, been so restored as makes it legally right to predicate of him that he never committed the crime of aiding the rebellion, may nevertheless be required to swear that the physical fact never existed, which he cannot do, as a fact resting in history cannot be blotted out; and if, by reason of the court’s insisting on the physical, and refusing to admit the moral, condition of the fact as it has now been legally reconstructed, the petitioner may be deprived of his property, then it is clear the court annuls the pardon and the amnesty.”
Whatever maybe the rights of the petitioner, lie can enforce them only in a court of competent jurisdiction, and this court can use only the powers conferred upon it. And our only power to entertain claims for captured and abandoned property is under the act of March 12,1863, c 120, and' according to it. And the first question here, and that on which the motion to dismiss the petition has been made and argued, is, whether this court has jurisdiction to entertain the case presented by the petition.
Admitting all that has been claimed by counsel, or is established by the authorities cited as to the effect of pardon and amnesty in the exposition of treaties under the law of nations, or the administration of criminal law and that with regard to these it effaces and blots out the crime so that it ceases to exist as such, and only remains (in the language of counsel) as “a physical fact” “resting in history.” Yet it was certainly competent for Congress to limit the jurisdiction of this court on such “physical fact;” and the question is whether they have done so and to what extent and with what effect in a case like this.
*342 That' a crime is effaced by pardon, and amnesty is a legal fiction expressed in the language of metaphor; it is borrowed from courts of criminal jurisdiction which find crimes and enforce penalties, and it is not of necessary apx>lication here under the act .of March 12, 1863, for we have no criminal jurisdiction and cannot find a crime or inflict a punishment, nor take cognizance of an offence or offender against the laws. The act gives us no such authority. It only authorizes us to find the facts on which the United States propose to restore property to its legal and lawful owner, in correction of an error committed by the United States in seizing as the property of rebels the property of loyal citizens. This purpose of correcting the error of the seizure, of itself, distinguishes between those who were and th ose who were not rebels; between those whose property was and those whose property ivas not liable to seizure, and thus refers necessarily to that aiding of the rebellion which counsel described ás “a physical fact” “resting in history,” “which cannot be blotted out;” for on this it depends whether the seizure was authorized or unauthorized, and whether there was or was not an error to be corrected.
Those who never aided the rebellion, in the ordinary meaning of those words, are entitled to their property, because they have not done the act for which it ivas seized. They have committed no offence and are not the subjects of pardon and amnesty, biit are of their own right entitled to what the statute was intended to give them, the best redress that the circumstances permitted for the wrong done them; so that their whole case under the statute, their title to the restoration of their xiroperty, and the consideration and obligation on which the United States act in restoring it, and correcting the error of its unauthorized seizure, depend altogether on the fact whether ante-cedently to the seizure they were rebels; and with this their pardon and amnesty at a subsequent time have nothing to do.
What this court is to find, and the claimant is to prove, is not his crime but his innocence, and the error of the United States in making the seizure. It is they who are on trial here, and not he; for it is on their error; the unlawfulness of their act in making the seizure, that our judgment for his recovery is conditioned by the statute, which thus gives us a special jurisdiction over a tort, or unauthorized act of the United States, entirely foreign to our general jurisdiction, which is limited to *343 contracts of .tbe United States. And tlie pardon and amnesty of a claimant belongs to bis misfeasances and-not to those of the United States. The language of the statute to the claimant is merely this: prove that your-property was not liable to seizure and we authorize the Court of Claims to adjudge its restoration to you. And this is the whole of his right and our jurisdiction under the statute; and if the claimant has now other rights, not founded on the fact that when his property was seized he had not given aid or comfort to the rebellion, he cannot xirosecute them here under the act of 12th March, 1863, That act, and our authority under it, reach only to the redress of a wrong, and the redress of a wrong belongs only to those who have borne it, and in confining it to them we deny no right to others and inflict on them no punishment.
The difference between the unlawful and the lawful seizure of-property is wide and clear; and where a statute whose words are plain, and whose purpose is luminous from its justice, mates the restoration of property to depend on the one, we can find no reason or authority for extending it to the other. The petitioner shows that the seizure of his property was lawful when made, and therefore that his case is not within the letter or purpose of the act or our authority under it.
The petitioner claims that under the pardon granted him, and the President’s proclamation of May 29,1865, he “has been both pardoned and amnestied, and restored to all his rights of property? But a suit in this court under the act of March 12,1863, is not “ a right of property,” as those words are used between individuals; for the United States as sovereign are not liable to suit, and if they submit themselves to suit it is ex gratea, and on such terms as they may see fit. The right, and the only right the petitioner can obtain here, is a right of antion against the United States under the act of 12th March, 1863, and he who comes here for a right limited by statute, must take it on the terms upon which it is limited.
It was said the act of 12th March, 1863 was in pari materia with the acts of August 6,1861, July 17,1862, and July 2,180,4, &c. And this as a general proposition is true; for acts are in pciri materia when they have a common purpose which they are tlie' means of carrying into effect. But the 3d section of the act of 12th March, 1863, has no common purpose with the statute in which jt is found, or the other statutes above mentioned. *344 Those seek to suppress the rebellion by reducing its means, and to punish rebels by the seizure and confiscation of their property, and to collect it and secure, it for the United States.. But the 3d. section of the act of 12th March, 1803, seeks to remedy the. misuse of the other acts by restoring property improvidently captured under them to its loyal and lawful owners. Its purpose, therefore, is not the purpose of the other statutes, or of the other sections of the act in which it stands, and it is to be construed by its own purpose and confined to it.
And on the whole case we decide as a conclusion of law as follows:.
That the petitioner having given aid and comfort to the rebellion-prior to the seizure, in 1865, of the cotton, the net proceeds of which are claimed in this suit, cannot maintain the same under the act of 12th March, 1863, c. 120, notwithstanding the pardon granted to him in 1866, and the proclamation of the President made May 29,1865.